**John Earl VETTER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16791.**

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1973.

Rehearing Denied March 14, 1973.

Stephen Jones and Tom Williams, Enid, for appellant.

Larry Derryberry, Atty. Gen., and Raymond Naifeh, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, John Earl Vetter, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Cleveland County, for the crime of Sale of Hashish. He was sentenced to serve a term of two (2) years in the state penitentiary in accordance with the verdict by the judge, and from this judgment and sentence a timely appeal has been perfected to this Court.

At the trial Bowman F. Upchurch, Jr., identified as an undercover agent for the Norman Police Department, testified that on the 2nd of October, 1970, he purchased from the defendant five pieces of hashish at defendant's residence, 426 South Santa Fe in Norman. Upchurch testified to the events of that evening to the following effect. Early in the evening Upchurch met Detectives Argo and Grissom, both of the Norman Police Department. Detective Argo searched Upchurch's person while Grissom searched his car. He was then given $35 and about 8:30 left in his car for defendant's apartment. There he was admitted by someone other than the defendant. When the defendant entered the room, Upchurch initiated a conversation with him by saying he wanted to "score some hash." (Tr. 14) After some hesitation on the defendant's part, Upchurch purchased five pieces of hash wrapped in tin foil for $30. The transaction took approximately 20 minutes after which Upchurch left defendant's apartment, met Argo and Grissom and again he and his car were searched. The search produced the five pieces of hash and $5 on his person. The hash was put into an envelope, sealed, and was initialed by all three officers.

Bud Argo then testified and confirmed Upchurch's story regarding the two meetings he and Grissom had had with Upchurch on the evening of October 2, 1970. Argo added that he and Grissom had followed Upchurch in their car both to and from the defendant's residence and had remained parked, within view of the apartment during the entire time Upchurch was inside. On cross-examination it was established that Argo had been given information from the Oklahoma Bureau of Investigation that the defendant was known to have marijuana in his possession.

Royce Grissom then testified and substantiated both Upchurch's and Argo's statements concerning his involvement in the incident.

Donald A. Flint was then called to testify and stated that he was employed by the Oklahoma State Bureau of Investigation and that he had been given the sealed envelope in order to test its contents. He did so test the substance and found it to contain marijuana, commonly known as Cannabis Sativa.

Michael Bannister testified to being a guest in defendant's apartment on the night in question. He then stated that he remembered hearing Upchurch ask the defendant as few as three and as many as six times to sell him some hash and the defendant appeared hesitant to sell to Upchurch.

The defendant, John Earl Vetter, testified and admitted he had sold Upchurch the hash after saying at least twice that he had none left. He testified that he sold Upchurch the hash because he did not want to irritate him as three of his guests had left, leaving only his wife and Bannister and that Upchurch was larger than either himself or Bannister. The defendant further testified:

"A. I didn't immediately sell it to him because I had never had any immediate contact with him * * *.

"Q. * * * [I]f he had been a friend of yours, would you have sold it to him?

"A. I can't say.

"Q. Is it possible that you would have?

"A. It's possible." (Tr. 180–181)

■■■ It is first contended on appeal that defendant should have been acquitted by the trial court because the affirmative defense of entrapment was proven. The defense urges that because of this defense the trial court erred in: (1) refusing to direct a verdict for the defendant; (2) in overruling defendant's demurrer to the evidence at the close of the State's case; (3) in its findings of fact and conclusions of law; and (4) in overruling defendant's motion for a new trial. The defense further urges that defendant had to be asked several times before he consented to the sale and that this, coupled with the disguised appearance of undercover agent, Upchurch, and his bulk, induced defendant to commit the crime. First, it is well settled that when police officers act in good faith with the objective of detecting crime they may use deception and trickery. [22 C.J.S. Criminal Law § 45(2), p. 138, as adhered to in, In Re Patton, Okl.Cr., 382 P.2d 28 (1963); McCart v. State, Okl.Cr., 435 P.2d 419 (1968)] Officer Upchurch was, therefore, perfectly justified in donning garb less suspicious than his usual neat appearance. Secondly, with regard to the officer's bulk, there were two adult males in the apartment and it seems unlikely that Officer Upchurch's bulk would have so intimidated the defendant as to persuade him to commit a crime he otherwise would not have committed. Finally, in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, the Supreme Court said:

"At the trial the factual issue was whether the informer had convinced an otherwise unwilling person to commit a criminal act of whether petitioner was already predisposed to commit the act and exhibited only the natural hesitancy of one acquainted with the narcotics trade."

In the Court's opinion the testimonial evidence, including the defendant's own testimony shows the hesitation exhibited by defendant was not due to his unwillingness to commit the crime but due only to natural apprehension in making an illegal sale of hashish to a stranger. For these reasons this Court believes the trial court properly decided the question of entrapment.

■■ Defendant's second contention is that the trial court committed error in sentencing defendant. The defense urges that the trial court denied the defendant equal protection of the law when it refused to grant a deferred sentence. In LaRue v. State, Okl.Cr., 404 P.2d 73 (1965), this Court said:

> "We have repeatedly held that the Court of Criminal Appeals will not interfere with the discretion of the trial court in granting or refusing an application for suspended sentence in asbence of an abuse of discretion."

Although there is a distinction between deferred and suspended, the discretion of the Court is the same. This Court feels that in the present case there is no evidence that the trial judge abused his discretion in this matter.

■ For his final contention the defense urges that the trial court erred in refusing to admit testimony by Mr. C. H. Hutchinson, a polygraph examiner. The Court can find no Oklahoma case in which the results of a polygraph test have been admitted into evidence and the Court finds no reason for the results of such a test to have been admitted in this case. This Court further feels that such testimony would have added nothing of significance to the testimony of the defendant.

For all of the above and foregoing reasons we are of the opinion that the judgment and sentence appealed from should be, and the same is, hereby affirmed.

BUSSEY and BRETT, JJ., concur.